RENDERED:  DECEMBER 3, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0169-MR

PNC BANK, NATIONAL
ASSOCIATION                                                                APPELLANT

                        APPEAL FROM KNOX CIRCUIT COURT
v.              HONORABLE MICHAEL O. CAPERTON, JUDGE
                        ACTION NO. 15-CI-00374

EDWARD RILEY AND PATRICIA
RILEY                                                                          APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, DIXON, AND MAZE, JUDGES.

COMBS, JUDGE:  PNC Bank, National Association, appeals a summary judgment

entered in favor of Edward and Patricia Riley that awarded them more than

$52,000.00.  The award includes penalties authorized by the provisions of KRS[1]

---

[1] Kentucky Revised Statutes.

382.365 for the bank's failure to timely record a release of the mortgage lien encumbering their property. After our review, we affirm.

The material facts are not in dispute. The Rileys own real property on Dancey Branch Road in Cannon, Kentucky. The property was encumbered by a mortgage granted by the prior owners of the property, Scott and Rhonda Payne, as mortgagors, to the predecessor of PNC Bank -- National City Bank -- as mortgagee, in January 2003. The underlying debt was fully satisfied by November 14, 2014, when the Rileys purchased the property.

By February 4, 2015, a release of the lien still had not been recorded by PNC. The Rileys sent a letter by certified mail to William S. Demchak, PNC's President and Chief Executive Officer. The correspondence was addressed to Demchak at PNC Bank, N.A., 222 Delaware Avenue in Wilmington, Delaware. The Rileys requested PNC to release the mortgage lien encumbering their Knox County real property. The Rileys identified the following items of pertinent information: the mortgagors and mortgagee; the property encumbered by the lien; Rhonda Payne's social security number; the date of the loan's origination; the date of recording; and the mortgage book and page number where the mortgage was recorded.

The return receipt of the United States Postal Service (USPS) does not indicate that the mail-piece to which it was attached was delivered to Demchak.

-2-

Instead, the USPS tracking service indicates that the mail-piece arrived in Wilmington, Delaware, on the afternoon of February 9 and was available there for pick up on that date. The tracking service indicates that actual delivery was scheduled for the following day, February 10.

Some weeks later, on the morning of March 4, 2015, a fax message directed to the Rileys' attorney by Cheryl Orange, a PNC representative, was received by counsel. Orange's message indicated that PNC "[has] received your request for a mortgage satisfaction for a lien in the names of Scott and Rhonda Payne." Orange directed counsel to "provide a copy of the recorded mortgage for the lien you are needing released." Counsel forwarded a copy of the mortgage to PNC; it was received by the bank on March 20. Several months later, on June 15, 2015, a lien release was finally recorded in the office of the Knox County Clerk.

On September 23, 2015, the Rileys filed a civil action against PNC. They sought to recover statutory penalties based on their allegation that PNC violated the provisions of KRS 382.365 requiring a lienholder to release a lien in the county clerk's office where it is recorded within thirty days from the date of satisfaction.

Before answering the complaint, PNC filed a motion to dismiss. PNC contended that the Rileys were not entitled to recover because they failed to satisfy

the statute's precise, mandatory notice requirements. This motion was denied. PNC filed its answer to the complaint, and a period of written discovery began.

On June 20, 2016, the Rileys filed a motion for summary judgment and argued that there was no genuine issue of material fact concerning PNC's failure to record the release as required by statute. Therefore, they contended that they were entitled to judgment as a matter of law. Supporting affidavits were attached to the motion.

PNC responded, arguing again that the Rileys could not rely on the provisions of KRS 382.365 because they had not strictly complied with its notice requirements. PNC contended that the Rileys failed to provide written notice of its request for the release by certified mail or personal delivery to PNC's principal place of business or to its agent for process. In addition, PNC contended that the Rileys could not show that the bank lacked good cause for its delay in recording the release. PNC filed a cross-motion for summary judgment to which supporting affidavits were attached.

In response, the Rileys denied that they had failed to satisfy the notice requirements outlined by the provisions of the statute. Additionally, they argued that they did not bear the burden of proving that PNC lacked good cause for its delay in recording the lien release. In an order entered August 10, 2016, the Knox Circuit Court denied the motions for summary judgment.

In a motion filed November 14, 2017, PNC Bank renewed its cross-motion for summary judgment. On November 27, 2017, the Rileys renewed their motion for summary judgment. The motions were renewed again in June and in August 2019.

On July 23, 2020, the circuit court granted summary judgment in favor of the Rileys. The court concluded that the notice mailed to PNC was sufficient to meet the requirements of KRS 382.365 and found that the bank lacked good cause for its delay in recording the release. In an order entered on January 26, 2021, the Rileys were awarded statutory penalties against the bank in the amount of $43,100.00; attorneys' fees in the amount of $9,040.00; and costs in the amount of $197.90. This appeal followed.

Our analysis focuses on application of the provisions of KRS 382.365. The statute requires lienholders to release any lien against real property within thirty days of satisfaction of the underlying debt. KRS 382.365(1). Failure to do so vests the owner of the encumbered property with a private right of action for relief, including statutory penalties where the lienholder lacks good cause for its failure to release the lien. KRS 382.362(3). In order for penalties to become applicable, several criteria must be found by the court: that the underlying debt was satisfied; that the lienholder received written notice of its failure to release the lien; and that the lienholder lacked good cause for not releasing the lien. Once

-5-

these findings are met, "the lienholder shall be liable to the owner of the real property . . . in the amount of one hundred dollars ($100) per day for each day, beginning on the fifteenth day after receipt of the written notice, of the violation for which good cause did not exist." KRS 382.365(4). The mandatory daily penalty increases to a total of "five hundred dollars ($500) per day for each day for which good cause did not exist after the forty-fifth day from the date of written notice." KRS 382.365(5).

On appeal, PNC contends that the trial court erred by granting summary judgment in favor of the Rileys because the Rileys failed to comply with the statutory notice requirements that trigger imposition of the statutory penalties. PNC also argues that a genuine issue of material fact remains concerning whether the bank's failure timely to file the release was excused by good cause.

> Summary judgment is properly granted where
>
> the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

CR[2] 56.03. In conducting our review, we must consider whether the trial court correctly determined that there were no genuine issues of material fact concerning the Rileys' statutory claim and that it properly concluded that they were entitled to

---

[2] Kentucky Rules of Civil Procedure.

judgment as a matter of law. *See Scifres v. Kraft*, 916 S.W.2d 779 (Ky. App. 1996). Because summary judgment involves only questions of law and not the resolution of disputed material facts, we do not defer to the trial court's decision. *Goldsmith v. Allied Building Components, Inc.*, 833 S.W.2d 378 (Ky. 1992). Instead, we review the trial court's interpretations of law *de novo. Cumberland Valley Contrs., Inc. v. Bell County Coal Corp.*, 238 S.W.3d 644 (Ky. 2007).

The language of KRS 382.365(4) authorizes the imposition of statutory penalties only where the court finds that the lienholder (1) "received written notice of its failure to release" and (2) "lacked good cause for not releasing the lien." KRS 382.365(4). PNC argues first that trial court erred by determining that the Rileys sent the bank proper written notice of its failure to record the lien release. PNC bases its argument on the text of the notice provision set forth in KRS 382.365(4)(d) which provides, in relevant part, as follows:

> This written notice shall be properly addressed and sent by certified mail or delivered in person to the final lienholder or final assignee as follows:
>
> . . . .
>
> > (d) For any other entity, including but not limited to limited liability companies, partnerships, limited partnerships, limited liability partnerships, and associations, to an officer, partner, or member at the entity's principal place of business or to an agent for process.

PNC correctly notes that the Rileys did not send notice by certified mail to PNC's registered agent for service of process nor did it send written notice by certified mail to an officer, partner, or member of PNC at PNC's principal place of business in Pittsburgh, Pennsylvania. Instead, the Rileys sent notice by certified mail to PNC's chief executive officer at 222 Delaware Avenue in Wilmington, Delaware. PNC contends that strict compliance with the notice requirements of the statute is prerequisite to the Rileys' recovery of the statutory penalties.

However, the bank's argument overlooks the text of KRS 382.365(4)(a), which provides that written notice can be sent by certified mail to a corporate lienholder properly addressed to "an officer at the lienholder's principal address or to an agent for process located in Kentucky[.]" The federal National Bank Act, 12 United States Code (U.S.C.) § 24 (2008), provides that upon making and filing articles of association and an organization certificate, "a national banking association shall become . . . a body corporate[.]" In that capacity, it has the power (among others): to adopt and use a corporate seal; to enjoy succession until such time as it is dissolved by its shareholders or by other means; to make contracts; to sue and be sued, to complain and defend, in any court of law and equity, as fully as natural persons; and to elect or appoint a board of directors and officers. *Id.* BLACK'S LAW DICTIONARY defines the phrase "body corporate" as "a public or private corporation." *Body Corporate*, BLACK'S LAW DICTIONARY (5th

ed. 1982).  It defines the term "corporation" as a legal entity "ordinarily consisting of an association of numerous individuals" with an "existence distinct from that of its several members" and "having the capacity for continuous succession" and "acting as a unit or single individual in matters related to the common purpose of the association."  *Corporation*, BLACK'S LAW DICTIONARY (5th ed. 1982).

As a corporate lienholder, PNC properly received statutory written notice by certified mail addressed to "an officer at the lienholder's principal address."  There is no dispute that William S. Demchak is PNC's President and Chief Executive Officer.  As the trial court observed, institutional information collected by the Federal Reserve System, which exercises supervisory and regulatory authority over domestic and foreign banking organizations, indicates that PNC Bank, N.A., is a national bank with the address of 222 Delaware Avenue, Wilmington, Delaware 19899.  The Federal Deposit Insurance Corporation, charged by Congress with examining financial institutions for safety, soundness, and consumer protection, also identifies the main office address for PNC Bank, N.A., as 222 Delaware Avenue, Wilmington, Delaware 19899.  Moreover, PNC acknowledges that its "main office" is in Delaware.  Thus, the circuit court did not err by concluding that written notice to PNC was properly addressed and sent by certified mail by the Rileys to William Demchak at PNC Bank, N.A., 222 Delaware Avenue in Wilmington, Delaware.

PNC next argues that the trial court erred by concluding that it received the Rileys' written notice of the bank's failure to record the release. It contends that there was a "complete lack of evidence establishing PNC received [the statutory] notice[.]" We disagree.

The Rileys' exhibits and affidavits indicate that their written notice was properly posted -- by certified mail -- to PNC at its principal address; that the correspondence arrived in Wilmington, Delaware, on the afternoon of February 9 and was scheduled for delivery to Delaware Avenue on February 10. PNC did not deny in affidavits that the mail was delivered to that address on that date. In fact, a fax message sent to the Rileys' counsel by PNC on March 4 confirms that PNC "received your request for a mortgage satisfaction" and that, as a result, the lien release was finally recorded. Additionally, the affidavit of Cynthia Donahue, Vice President and Manager, Collateral Release Lending Services, with PNC indicates that "[o]n or prior to March 4, 2015, PNC received a communication from [the Rileys'] attorney in this action requesting that PNC provide a release of the mortgage at issue." Under these circumstances, the trial court did not err by concluding -- as a matter of law -- that PNC received the statutory notice.

Finally, PNC contends that there is a genuine issue of fact concerning whether the bank lacked good cause for its failure to timely record the lien release rendering the award of summary judgment premature. Again, we disagree.

In *Hall v. Mortgage Electronic Registration Systems Inc.*, 396 S.W.3d 301 (Ky. 2012), the Supreme Court of Kentucky held that the "good cause" determination required by the provisions of KRS 382.365 was intended to be a question of law for the court to resolve and that all relevant circumstances should be considered. In order to justify its failure timely to record the release, PNC points to a series of allegations: the Rileys' 15-day delay in providing the bank with a copy of the recorded mortgage as directed by PNC in March 2015; the records of multiple loans to the original mortgagors (Scott and Rhonda Payne) in PNC's computer system; the age of the original loan (from the early 2000's); and the fact that PNC was not the originator of the loan to the Paynes.

We agree with the trial court that no legitimate controversy existed to justify the bank's failure to timely record the release. PNC was at all times in possession of the information necessary to prepare and record the lien release. Indeed, even after the Rileys forwarded a copy of the recorded mortgage to PNC, the bank failed to act promptly to record the release. There is no basis upon which to conclude that the trial court did not consider the circumstances surrounding PNC's failure to timely record the release. In light of the totality of the circumstances, the trial court did not err by concluding that PNC's failure to record the release was not excused by good cause.

We affirm the judgment of the Knox Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:          BRIEF FOR APPELLEE:

Sarah S. Mattingly             Ralph W. Hoskins
Louisville, Kentucky           Corbin, Kentucky